**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **MARK SHILLER,** ) | **CASE NO. 8:03CV365** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM AND ORDER** |
| **SARPY COUNTY, a political** ) | |
| **subdivision of the State of Nebraska,** ) | |
| ) | |
| **Defendant.** ) | |

     This matter is before the Court on the Plaintiff's Motion for Relief under Rule 60(b) (Filing No. 170). The Plaintiff Mark Shiller contends that, following full discovery, evidence was adduced that creates a genuine issue of material fact regarding whether (1) Pat Thomas's stated reason for disciplining Shiller was simply a pretext for retaliating against him for the exercise of his First Amendment rights, and (2) whether Thomas's acquiescence in others' use of the Sarpy County Sheriff's Office internal affairs complaint procedures violated Shiller's right to be free from retaliation for the exercise of his First Amendment rights. I have reconsidered my prior decision to dismiss Pat Thomas from this lawsuit, and I conclude that Pat Thomas will be reinstated as a defendant in this case, but only in his official capacity. Thomas is entitled to qualified immunity in his individual capacity.[1]

**Background**

     In the Court's Memorandum and Order on Thomas's Motion for Summary Judgment based in part on qualified immunity, the Court considered the threshold inquiry required by *Saucier v. Katz,* 553 U.S. 194 (2001): whether the facts alleged, taken in the light most

---

[1] Pat Thomas recently retired from his position at Sarpy County Sheriff. Accordingly, Sarpy County Sheriff Jeffrey Davis, Thomas's successor, will be substituted for Thomas as a defendant in this case in his official capacity as Sarpy County Sheriff.

favorable to the party asserting the injury, showed that the Defendant's conduct violated the Plaintiff's federal statutory or constitutional right.

> In order to establish a claim of unlawful First Amendment retaliation, a public employee must show that he suffered an adverse employment action that was causally connected to his participation in a protected activity. *See Bechtel v. City of Belton*, 250 F.3d 1157, 1162 (8th Cir.2001); *see also Hudson v. Norris*, 227 F.3d 1047, 1050-51 (8th Cir.2000). Once the employee satisfies his initial burden, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for his or her actions. *See Graning v. Sherburne County*, 172 F.3d 611, 615 (8th Cir.1999). If the employer meets this burden, the burden shifts back to the employee to show that employer's actions were a pretext for illegal retaliation. *See id.*

*Duffy v. McPhillips,* 276 F.3d 988, 991 (8th Cir. 2002). More than a year ago, the Court concluded that Shiller had presented sufficient evidence to state a prima facie case for retaliation based upon the exercise of his First Amendment rights,[2] and that Thomas had established a legitimate reason for the discipline that he imposed on Shiller based on Shiller's June 10, 2003, motor vehicle accident. Finding sufficient evidence in the record to support Thomas's proffered explanation, any presumption of retaliation "drop[ped] out of the picture." *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

On the record developed at that time, the Court concluded that Shiller had failed to present evidence that the reason given by Thomas for the discipline imposed on Shiller was a pretext for retaliation. Without sufficient evidence of pretext, I concluded that Shiller had failed to state a claim of retaliation against Thomas, in both his official and personal

---

[2] Shiller exercised his First Amendment right in corresponding to the Nebraska Attorney General's Office (in letters dated March 27, 2003, and April 17, 2003) in which he complained that Sarpy County Sheriff Pat Thomas and Chief Deputy Jeff Davis had engaged in illegal or financially irresponsible activities, such as exercising their influence in matters of promotion and the awarding of contracts, awarding frequent flyer miles to individuals based on Department-related travel; and improperly spending public funds for personal travel expenses. The Court previously determined that Shiller's right of expression through the letters was protected under the First Amendment, and that he demonstrated the causation element needed to state a *prima facie* case of retaliation.

capacities, and Thomas was dismissed from the action, without the need for a complete analysis of his right to qualified immunity from suit. If, at that time, I had had before me the evidence that Shiller submitted in opposition to the County's motion for summary judgment,[3] I might have concluded that there was evidence sufficient to raise a genuine issue regarding pretext. Accordingly, I grant the Plaintiff's motion for reconsideration, and I take up the analysis where I left off a year ago, but now with the benefit of the evidentiary record developed in connection with the County's motion for summary judgment, particularly the evidence submitted with the Plaintiff's Index of Evidence at Filing No. 158, and Judge Schreier's Memorandum and Order denying the County's Motion for Summary Judgment.

**Evidence of Pretext**

The "new" evidence includes, but is not limited to, the deposition testimony from Shiller's co-workers in Sarpy County, Fred Bishop and Tilford Tucker, and exhibits demonstrating that the discipline imposed on Shiller for negligent and careless driving was more severe than punishment imposed on other deputies of the department for somewhat similar infractions. (See Filing No. 158A, Exs. 47, 48, 49, and Deposition excerpts from F.Bishop and T.M. Tucker).

Co-worker Fred Bishop testified that when Thomas learned that Bishop had discussed Thomas's travel with Shiller, Thomas became visibly angry and made comments suggesting that he did not appreciate Bishop discussing that subject with Shiller. Bishop stated:

---

[3] I am cognizant that the early discovery in this case was limited to the discovery of facts pertinent to the qualified immunity defense raised by Thomas.

3

> [Thomas] had come over to our office after everything had got going with the situation. . . . [H]e came in . . . and went around and picked the office apart, the situation in the office, the cleanliness of the office, all sorts of things. . . . . . .And he basically in my opinion was kind of on a tirade. And at some point I asked him, I said, "hey, do you want me to continue to address each issue as you bring it up or do you want me to stand here and listen to you? His response was something to the effect of "no, I want you to be a man and come to me when you have a problem instead of going behind my back and talking to Shiller about . . ." and he didn't say anything specific, just about things. . . . I've always been very forthright and direct with you and any other member of this command staff or anybody else in the department and he told me that no, he didn't think that that was the case. And then he left.

Bishop Dep. at 107:24 -108:24. Bishop also testified that Thomas told him that he was upset because the Fraternal Order of Police did not expel Shiller from the union, and because the union failed to confront Shiller. *Id.* at 105-06. By itself, Thomas's display of anger is not proof that the discipline imposed on Shiller was pretextual. *See Hoffman v. Rubin,* 193 F.3d 959, 965 (8th Cir. 1999) (rejecting evidence of "the high level of animosity exhibited by [the defendant]" as "too tenuous" to constitute evidence of pretext in a retaliation case).

Shiller also relies on the testimony of another coworker, T.M. Tucker, who has given deposition testimony that tends to corroborate Shiller's complaints about Thomas's reimbursement for non-business travel to Arizona. (Filing No. 158A, Tucker Dep. at 10-12). The statements of another Sarpy County employee corroborating what Shiller said about Thomas are also not sufficient to show that Thomas's reason for disciplining Shiller was simply a pretext for retaliating against him based on Shiller's complaints to the Attorney General's office.

Shiller also submitted evidence showing that the discipline imposed on Shiller for his June 10, 2003, accident was more severe than the discipline imposed on other officers for negligent and careless operation of motor vehicles while on duty. (*Compare* Filing No.

4

158, Ex. 47: Freeborn's 12-hour suspension; Ex. 48: Spethman's 12-hour suspension *with* Shiller's 36-hour suspension and required attendance at a defensive driving class at the County's expense. (Exhibit 11 from Preliminary Injunction; Filing No. 134, Thomas Aff. at ¶10a). I am mindful that the evidence also suggests that the officers who received less severe discipline may not have acted as egregiously or may not have caused as much property damage as Shiller. (*Compare* Filing No. 158, Ex. 47: describing the damage to the Department's vehicle as "a black scuff mark on the bumper" and that "damage to both vehicles as under $500"; Ex. 48: describing "a minor property damage accident"; and Ex. 49: estimating the amount of damage to Department vehicle as $25, and the damage to the other drivers' vehicle as (plus) $500 *with* Filing No. 134, Thomas Affidavit ¶ 8, and Exhibits 9 and 22 from the Preliminary Injunction Hearing describing Shiller's accident and estimates of the resulting damage in excess of $9,000 to the patrol car and $7,000 to the other vehicle.) Nevertheless, the 36-hour suspension was three times as severe as the discipline proposed by Shiller's immediate supervisor, and three times as severe as the discipline imposed on other deputies who operated their vehicles negligently.

When the evidence from Shiller's coworkers is considered with the evidence that the discipline that Thomas imposed on Shiller for the June 10, 2003, accident was somewhat more severe than the discipline Thomas imposed on other officers for somewhat similar motor vehicle violations, I conclude that Shiller has presented some evidence that the reasons given by Thomas for the imposition of discipline may have been a pretext for retaliation. I also conclude that some inference could be drawn that Thomas acquiesced in others' use of the Sarpy County Sheriff's office internal affairs complaint procedures against Shiller with indifference to whether such a use of the procedures was in retaliation

5

for Shiller's exercise of this First Amendment rights.  Thus, I will reinstate Thomas as a defendant in this action.

**Qualified Immunity Framework**

For the reasons that follow, I conclude that the claims against Thomas should be allowed to proceed against him in his official capacity only, because Thomas is entitled to qualified immunity in his individual capacity.  Although the *Saucier v. Katz* analysis is more challenging in the context of a case alleging retaliation,[4]  I will assume that the threshold step of the analysis, requiring a finding of a constitutional violation, has been satisfied.  For purposes of the qualified immunity analysis, I assume, without deciding, that Thomas bore a retaliatory animus against Shiller due to his exercise of First Amendment rights and that such animus could have played some role in (1) Thomas's imposition of discipline against Shiller, and (2) Thomas's tacit approval of other officers' use of the internal affairs complaint procedures against Shiller.

The second step of the qualified immunity analysis requires the Court to determine whether the statutory or constitutional right at issue was clearly established.  For a right to be "'clearly established,' [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*,  125 S.Ct.

---

[4]The first step in the *Saucier v. Katz* analysis is a determination of whether a constitutional violation occurred.  553 U.S. 194, 201-02 (2001).  When the alleged constitutional violation is *retaliation* against the plaintiff for the exercise of a constitutional right, the first step of the analysis may be confused with the second, *i.e.*, whether a reasonable official would *understand* that his or her conduct violated that right.  An allegation of retaliation by its very nature implies knowledge and intent on the part of the wrongdoer.  The second step, however, requires the Court to use the objective standard of a reasonable official in the defendant's position, and not the subjective standard of the defendant's own mental status.  If the two steps of the *Saucier v. Katz* analysis are not handled separately, defendants accused of retaliation effectively may be denied their right to qualified immunity.

596, 599, 160 L.Ed.2d 583, (2004)(quoting *Saucier,* 533 U.S. at 201). The Eighth Circuit has recognized that the second step involves a "fact-intensive inquiry," *see Littrell v. Franklin,* 388 F.3d 578, 583 (8th Cir. 2004). In order for a plaintiff to overcome an assertion by defendants of qualified immunity, "a plaintiff must assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issue of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right." *Liebe v. Norton,* 157 F.3d 574, 577 (8th Cir. 1998), citing *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996).

The "right allegedly violated must be defined at the appropriate level of specificity before a court can determine whether it was clearly established." *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005). "The linchpin of qualified immunity is the objective reasonableness of the officer's actions." *Wilson v. Spain,* 209 F.3d 713, 716 (8th Cir. 2000). "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001).

It is important to recognize that in the second step of the *Saucier v. Katz* analysis the Court considers the facts objectively, as a "reasonable official" would do, to determine whether such an official would have known that his actions violated a plaintiff's clearly-established right. The Court is not required to, nor should it, probe the inner workings of a defendant's mind and speculate about his subjective thought processes.

> What must be kept in mind, however, is that once the predicate facts have been established, for the purposes of qualified immunity there is no such thing as a "genuine issue of fact" as to whether an officer "should have known" that his

7

> conduct violated constitutional rights. The conduct was either "reasonabl[e] under settled law in the circumstances," *Hunter*, 502 U.S. at 228, 112 S.Ct. at 537, or it was not, and this is a determination of law that should be made at "the earliest possible stage in litigation," *id.* at 227, 112 S.Ct. 534.

*Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000).

The predicate facts are not in dispute. The parties agree that Thomas was involved directly in the imposition of discipline against Shiller in connection with the June 10, 2003, accident. The parties also agree that Thomas was involved, at least indirectly by acquiescing, in other officers' use of the Department's internal affairs complaint procedures against Shiller. (*See* Filing No. 134, Thomas Affidavit at ¶13)  The question for the Court is whether the contours of a public employee's right to be free from retaliation based on an exercise of his or her First Amendment right were sufficiently defined such that a reasonable official in Thomas's position would have known that his alleged actions or inactions indeed violated the public employee's right.

**Imposition of Discipline**

There was a legitimate basis for the imposition of discipline on Shiller. The accident occurred on June 10, 2003. On June 11, 2003, in connection with the second level of review of the matter, Lt. Daganaar recommended to Shiller's superior officer Captain Jackson, that Shiller receive a 36-hour suspension from duty – three times greater than the suspension recommended in the first level of review. Lt. Daganaar stated:

> I do not agree with Sgt, Svoboda's recommendation that Dep. Shiller receive a 1 day suspension from duty. I feel that the actions by Dep. Shiller are far more serious than the recommendation made by Sgt. Svoboda and should be addressed accordingly. The fact that there were no injuries to Mr. Jarvis or to Dep. Shiller is pure luck and should not diminish the seriousness of this incident. This was a very avoidable accident that should not have happened. Due to Dep. Shiller's negligen[ce] causing a serious property damage

>accident I recommend that Dep. Shiller receives a 36 hours of suspension from duty as a result of this incident.

Ex. 9 from Preliminary Injunction Hearing (officer's badge numbers omitted for readability). Lt. Daganaar's memorandum was written several days before Thomas became aware that Shiller had corresponded to the Nebraska Attorney General's Office, complaining about him. I recognize that the final recommendation for discipline was made on June 20, 2003, (concurring with Lt. Daganaar's recommendation for a 36-hour suspension and proposing the defensive driving course) and was not imposed by Thomas until the end of August. Lt. Daganaar's June 11 memorandum, however, persuades me that a reasonable officer in Thomas's position would not believe that a 36-hour suspension and a mandatory defensive driving course as discipline for Shiller's June 10, 2003, accident would violate his right to be free from retaliation for the statements he made in letters to the Nebraska Attorney General. I conclude that Thomas is entitled to qualified immunity on this claim.

**Acquiescence in Others' Use of Internal Affairs Complaint Procedures**

As Judge Schreier acknowledged, there is evidence in Filing No. 158 that Thomas distributed copies of Shiller's letters to the Attorney General to each Sarpy County Sheriff Department employee who was named in them. (Filing No. 158, Davis Dep. at 39) The Department's Lt. London initiated internal affairs investigations on each of the officers named in Shiller's letters, and, later, the Department's internal affairs complaint procedures were used by the officers named in Shiller's letters to begin internal affairs investigations concerning Shiller. There is evidence that Shiller did not intend to make complaints against these other officers, and there is evidence that Shiller felt harassed by being subjected to the numerous internal affairs investigations initiated in September 2003. The Nebraska State Patrol investigator, Gary Plank, stated that the distribution of copies of Shiller's letters

to the officers named in them may have impeded the investigation of Shiller's complaints, and, at least in Plank's opinion, Shiller's complaints were unambiguously directly at the Sheriff and his Chief Deputy, and not at any others. (Filing No. 158, Plank Dep. at 22:12-24).

There is no evidence that Thomas encouraged the officers to pursue internal affairs complaints against Shiller, although, as Sheriff, he undeniably had knowledge that the officers were following the Department's "Standard Operating Procedures" and initiating complaints against Shiller related to his letters to the Attorney General. If there was an abuse of the Department's procedures or a misuse of its processes, it would appear that the Sheriff had the power to stop such abuses, although he stated in his affidavit that "I do not have the power to prohibit my employees . . . from filing complaints within or about our office. " (Filing No. 134, Thomas Aff. at ¶13.)

It is well-settled that "[a] supervisor cannot be held liable for an employee's unconstitutional actions based on a theory of respondeat superior." *Ottman v. City of Independence*, 341 F.3d 751, 761 (8th Cir. 2003). Nevertheless, a supervisor may be held responsible under §1983 in some circumstances. "To hold supervisors liable under §1983, a plaintiff must show that the supervisor had actual knowledge that his subordinates caused deprivations of a constitutional right, **and** that he demonstrated deliberate indifference or tacit authorization of the offensive acts by failing to take steps to remedy them." *McDowell v. Jones*, 990 F.2d 433, 435 (8th Cir. 1993)(emphasis added). This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).

Shiller asserts that Thomas knew that the Department's Standard Operating Procedures regarding the filing of internal affairs complaints were being misused by the other officers for the purpose of retaliating against Shiller, and that Thomas took no steps to halt the misuse of the Department's procedures. Shiller argues that because the Court found[5] that Thomas tacitly approved the officers' use of the internal affairs complaints against Shiller, the Court must reinstate Thomas as a defendant in the action.

There is no doubt that Thomas had "actual knowledge" that the officers filed internal affairs complaints against Shiller and that Thomas viewed these actions as consistent with the Department's Standard Operating Procedures. There is also no doubt that the other officers filed their complaints against Shiller because he had mentioned them in the letters to the Attorney General's office, as evidenced by the content of the internal affairs complaints. (Exs. 13-16 from Preliminary Injunction Hearing). Thomas's passive acquiescence in allowing the officers to use the internal affairs complaint procedure may indeed constitute tacit approval of their actions. For purposes of the qualified immunity analysis, however, the Court must determine whether a reasonable official in Thomas's position would understand that his failure to intervene in the internal affairs complaint procedure would violate Shiller's constitutional rights. A reasonable official in Thomas's position might well presume that the internal affairs complaint procedures would best operate without his interference, and that frivolous or malicious complaints ultimately would be resolved by dismissal, and, if necessary, discipline against the frivolous or malicious accuser. A reasonable official in Thomas's position also might well presume that it would

---

[5] Judge Karen Schreier's Memorandum and Order denying the County's motion for summary judgment includes this observation: "Thomas and Polikov at least tacitly approved of the use of Internal Affairs processes and criminal prosecutions against Shiller, arguably for the purpose of harassing him."

be inappropriate for him to take unilateral action to disrupt the Department's Standard Operating Procedures.

Because the Sarpy County Sheriff's Department's Standard Operating Procedures allow the filing of internal affairs complaints to resolve departmental conflicts, including conflicts involving employment-related matters, I conclude that the contours of a public employee's right to be free from retaliation for the exercise of his free speech are not so clear that a reasonable official in Thomas's situation would have understood that his actions, or in this case, inaction, violated Shiller's right to be free from retaliation. Accordingly, Thomas is entitled to qualified immunity in his personal capacity on this claim.

**Municipal Liability**

The somewhat tortured progression of this case [6] prompts me to address my view on the County's posture as the parties prepare for trial.

Judge Shanahan, in his Memorandum and Order addressing the County's motion to dismiss in this case, noted that:

> A municipality can, however, be held liable under § 1983 where the action alleged "to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the county's] officers." *Kuha v. City of Minnetonka*, 328 F. 3d 427, 439-40 (8th Cir. 2003)(quoting *Monell,* 436 U.S. at 690. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Municipal liability, therefore, attaches when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final

---

[6] The case began with Judge Shanahan, who disposed of the Defendants' motion to dismiss, but was unable for health and scheduling reasons to resolve the motion for preliminary injunction. The motion for summary judgment based on qualified immunity was resolved by me, and the motion for summary judgment on behalf of the County was resolved by Judge Karen Schreier, who graciously visited this district to assist with our civil case load.

> policy with respect to the subject matter in question." *Pembaur v. Cincinnatti*, 465 U.S. 469 483-84 (1986).

(Filing No.30 at p. 9).

Judge Schreier denied summary judgment to Defendant Sarpy County finding genuine issues of material fact bearing on the issue of pretext. Judge Schreier focused not only on what Thomas deemed to be the Standard Operating Procedures of the Sheriff's Department, but also on the actions taken by Sarpy County Attorney Lee Polikov, another policy-making official for Sarpy County. Reinstating Sheriff Thomas, in his official capacity only, based on the full evidentiary record now before the Court, is in the interests of justice.

The Eighth Circuit Court of Appeals, in *Speer v. City of Wynne*, stated as follows:

> Our court has previously rejected the argument that . . . there must be a finding that a municipal employee is liable in his individual capacity as a predicate to municipal liability. *See Praprotnik v. City of St. Louis,* 798 F.2d 1168, 1172-73 n. 3 (8th Cir.1986), rev'd on other grounds, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); see also *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be liable under § 1983, even though no government individuals were personally liable."). . . . *Heller* should not be read to require a plaintiff to show more than that a governmental policy or custom was the "moving force" that led to the deprivation of his constitutional rights, the foundation for municipal liability recognized by the Court in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

276 F.3d 980, 985 -986 (8th Cir. 2002).

I have considered the impact of the new evidence presented and Judge Schreier's findings on the Court's previous dismissal of Thomas. My conclusion is that Thomas is entitled to qualified immunity in his individual capacity, but that there are genuine issues of material fact that preclude his dismissal in his official capacity.

13

For these reasons, I conclude that the case shall go forward against the County and against the Sarpy County Sheriff in his official capacity.[7]

Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion for Relief under Rule 60(b) (Filing No. 170) is granted;

2. The dismissal of Patrick Thomas has been reconsidered, and Thomas is entitled to qualified immunity in his personal capacity, but he shall be reinstated as a defendant in this action in his official capacity only; and

3. Because Pat Thomas has retired from his position as Sarpy County Sheriff, his successor, Sarpy County Sheriff Jeff Davis, shall be substituted in his official capacity for Thomas as a defendant in this case.

---

[7] Judge R. Guy Cole of the Sixth Circuit Court of Appeals, citing the Eighth Circuit Court of Appeals' *Proprotnik* decision, makes this point:

> A given constitutional violation may be attributable to a municipality's acts alone and not to those of its employees--as when a government actor in good faith follows a faulty municipal policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Dodd v. City of Norwich*, 827 F.2d 1, 9 (2d Cir. 1987) (Pratt, J., dissenting) (noting that the city's policy could be unreasonable, "even if [the individual government actor] himself, who was trained to follow that policy, was found to be not negligent in his own conduct."). A municipality also may be liable even when the individual government actor is exonerated, including where municipal liability is based on the actions of individual government actors other than those who are named as parties. *See Proprotnik v. City of St. Louis*, 798 F.2d 1168 (8th Cir.1986), rev'd on other grounds, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *de Feliciano v. de Jesus*, 873 F.2d 447 (1st Cir.1989); *Carapellucci v. Town of Winchester*, 707 F.Supp. 611 (D.Mass.1989). Moreover, it is possible that no one individual government actor may violate a victim's constitutional rights, but that the "combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir.1985).

*Epps v. Lauderdale County,* 45 Fed.Appx. 332, 334-35 (6th Cir. 2002).

Dated this 3rd day of June, 2005.

                                          BY THE COURT:

                                          <u>s/Laurie Smith Camp</u>
                                          United States District Judge