## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **MARK SHILLER,** | ) | **CASE NO. 8:03CV365** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **ORDER ON MOTION FOR** |
| | ) | **JUDGMENT NOTWITHSTANDING** |
| **SARPY COUNTY, a political** | ) | **THE VERDICT, FOR NEW TRIAL,** |
| **subdivision of the State of Nebraska,** | ) | **AND FOR REMITTITUR** |
| **and JEFF DAVIS, in his official** | ) | |
| **capacity as Sheriff of Sarpy County,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Defendants' Motion for Judgment Notwithstanding the Verdict, for a New Trial, and for Remittitur (Filing No. 219). For the reasons that follow, the Defendants' motions will be denied.

**Motion for Judgment Notwithstanding the Verdict**.

Federal Rule of Civil Procedure 50 authorizes a person to seek judgment as a matter of law after a party has been fully heard on an issue and the moving party can show that there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party on that issue. Defendants Sarpy County and Sarpy County Sheriff Jeff Davis, in his official capacity, made such a motion at the close of the Plaintiff's case. The motion is renewed now as motion for judgment notwithstanding the verdict, also known as a judgment as a matter of law under Rule 50(b). Defendants argue that Shiller's remarks and conduct were not entitled to First Amendment Protection and that there was insufficient evidence presented to support a jury finding that an adverse employment action was taken by the Defendants against Shiller. The Defendants also contend that the

evidence was insufficient to show that their adverse actions against Shiller were motivated by his protected speech and conduct.

The Eight Circuit Court of Appeals has said:

> It is well settled that we will not reverse a jury's verdict for insufficient evidence unless, after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party. *Gardner v. Buerger*, 82 F.3d 248, 251 (8th Cir.1996).

*Ryther v. KARE 11,* 108 F.3d 832, 836 (8th Cir.1997).

In viewing the evidence in the light most favorable to the verdict, courts must consider

> the evidence in the light most favorable to [the prevailing party], assume all conflicts in the evidence were resolved in [the prevailing party's] favor, assume [the prevailing party] proved all facts that his evidence tended to prove, and give [the prevailing party] the benefit of all favorable inferences that reasonably may be drawn from the proven facts. . . .  To prevail on its motion for JAML, [the moving party under Rule 50] has the difficult task of demonstrating that all the evidence points in [its] direction and is susceptible of no reasonable interpretation sustaining [the prevailing party's] position.

*Morse v. Southern Union Co.,* 174 F.3d 917, 922 (8th Cir. 1999).  Thus, "[j]udgment as a matter of law is appropriate when the record contains no proof beyond speculation to support a verdict." *Wash Solutions, Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 892 (8th Cir. 2005) citing *Arabian Agric. Servs. v. Chief Indus.,* 309 F.3d 479, 482 (89th Cir. 2002).

I find that there was ample evidence to support a jury finding of adverse employment actions and that those actions were motivated in part by Shiller's protected conduct. Before trial, I determined as a matter of law that certain statements and conduct by Shiller

were entitled to First Amendment protection. Those were identified for the jury in Instruction No. 6, as follows:

> "Shiller's protected conduct" includes: 1) the statements that Shiller made in Exhibits 1 and 2, the March 27, 2003, and April 17, 2003, letters to the Nebraska Attorney General's Office, including Shiller's statements made to Lee Polikov about the letters; 2) Shiller's statements challenging Sgt. Svoboda's alleged reference to a de facto ticket quota; and 3) the union's representation of union member and employee, referred to by the initials S.G., in a disciplinary hearing.

In previous rulings in connection with the motions for summary judgment and the motion for reconsideration, I concluded as a matter of law that Shiller's protected speech under the First Amendment included the statements identified above as Exhibits 1 and 2, and I concluded as a matter of law that his protected conduct included the union's representation of the employee referred to as S.G. In making these determinations as a matter of law, I considered whether Shiller's speech addressed matters of public concern under *Connick v. Myers*, 461 U.S. 138, 146-148 (1983), and its progeny. With regard to Shiller's opinions and the request for an independent investigation that were contained in correspondence to the Attorney General and expressed to Sarpy County Attorney Lee Polikov, I concluded that there was no genuine issue of material fact that Shiller's speech related to the expenditure of tax dollars and the legality of conduct by an elected person and his chief deputy. With regard to Shiller's statement challenging Sgt. Svoboda's alleged reference to a de facto ticket quota, I concluded that Shiller's speech to Captain Jackson related to

a matter of public concern because such conduct, authorizing de facto ticket quotas, if it had occurred, would have violated Nebraska law.[1]

I also concluded before trial that Shiller's conduct and statements related to the union's representation of S.G. in a disciplinary proceeding were protected conduct because Shiller was the union president at the time of the comments, and his comments and conduct were in connection with the union's representation of S.G.. Shiller's conduct was protected by his rights to freedom of association and speech.

In balancing the competing interests of Shiller and Sarpy County under *Pickering*,[2] I concluded as a matter of law that Shiller's interest in commenting on matters of public concern outweighed the County's interest in rendering efficient service to its constituents. To the extent that there was any disruption to the office of the Sarpy County Sheriff, I concluded that the disruption and disharmony in the workplace was primarily a result of County officials' decision to conduct the County's own internal affairs investigation into Shiller and others in the manner that those investigations were conducted. There was no evidence that Shiller's ability to perform his assigned duties was adversely affected by the exercise of his protected conduct and speech.

---

[1] While Sgt. Svoboda disputed making the statement about the ticket quota, there was no dispute that Shiller reported to Captain Jackson what Shiller believed he heard Svoboda say. It is also undisputed that Captain Jackson recalled the conversation with Shiller; that Jackson took Shiller's report seriously; and that Jackson acted promptly on the report.

[2] If the speech is determined to be a matter of public concern, the court must balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968).

I will address briefly the Defendants' argument that they are entitled to a new trial because the Court should have instructed the jury that speech of public importance loses its First Amendment protection if the public employee knew it was false or made it in reckless disregard of the truth. There was no evidence that Shiller knew that any statement made by him was false at the time he made it, and there was uncontroverted evidence regarding the manner in which Shiller became apprised of the information that led to his request for an official investigation by the Attorney General's Office, including statements made to him by other Sarpy County Sheriff Office employees and through Shiller's personal observation.

Shiller testified that he considered several actions to be adverse employment actions, including those submitted to the jury: the discipline that Shiller received for the June 10, 2003, motor vehicle accident and the internal affairs investigations that were allowed to proceed against him. There was no dispute that these actions were taken. The only real dispute was whether Shiller's exercise of his First Amendment rights motivated the Defendants to take adverse employment actions against him. There was evidence that the discipline imposed on Shiller for the accident was more severe than the discipline imposed on other deputies for similar accidents. There was also evidence that the internal investigation conducted by Sarpy County exceeded the scope of any investigation requested by Shiller, and the manner in which the County performed the investigation was questioned by at least one law enforcement officer outside the Sarpy County Sheriff's Office. There was also testimony by Shiller that he commenced this action and sought preliminary injunctive relief to prevent what he believed was his impending termination.

For all these reasons, the Defendants' motions for judgment as a matter of law and for a new trial are denied.

**Remittitur**

Compensatory damages for emotional distress must be supported by "competent evidence of a genuine injury," and a plaintiff's own testimony, along with the circumstances of a particular case, can carry this burden. *Kucia v. Southeast Arkansas Cmty. Action Corp.*, 284 F.3d 944, 947 (8th Cir. 2002) (internal quotation marks and citation omitted). The size of the compensatory award should be reviewed "with a keen sense of respect for the latitude given to juries" (*id.* at 498), and the Eighth Circuit Court has stated that it will order remittitur "only if the verdict is so grossly excessive as to shock the conscience." *Ouachita Nat'l Bank v. Tosco Corp.*, 716 F.2d 485, 488 (8th Cir.1983). *See also, Rowe v. Hussmann Corp.*, 381 F.3d 775, 783 (8th Cir. 2004).

The jury's award to Shiller does not shock the conscience. Shiller's testimony was that he brought this action in part because he was concerned that the County was "setting him up" for termination. Shiller testified that he lost sleep and weight as a result of the County's actions, that he felt anxious and worried, and that some of his personal and professional relationships suffered as a result of his anxiety over his employment situation. Shiller continued to go to work for Sarpy County as a deputy throughout the pendency of this lawsuit, which, his counsel pointed out during closing argument was in excess of 800 days. The jury reasonably could have determined that the value of the mental anguish and humiliation suffered by Shiller from June 2003 until the trial's conclusion was $155,000.

When a jury is asked to "determine injuries not easily calculated in economic terms," awards based on those injuries should be committed to the sound discretion of the jury. *Eich v. Board of Regents for Cent. Missouri State University,* 350 F.3d 752, 763 (8th Cir. 2003)(discussing damages for pain and suffering).  For these reasons, I will not remit the jury's determination of damages, although I do consider it to be generous.

IT IS ORDERED:

The Defendants' Motion for Judgment Notwithstanding the Verdict, for a New Trial, and for Remittitur (Filing No. 219) is denied in all respects.

Dated this 17th day of October, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge